IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

EQUAL EMPLOYMENT                                                                      PLAINTIFF
OPPORTUNITY COMMISSION

vs.                                       Civil No. 1:09-cv-01042

GREAT LAKES CHEMICAL CORPORATION                                              DEFENDANT

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before this Court is Defendant's Motion for Summary Judgment. ECF No. 14. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2009), the Honorable Harry F. Barnes referred this Motion to this Court for the purpose of making a report and recommendation. ECF No. 28. In accordance with that referral, this Court enters the following report and recommendation and recommends this Motion be **DENIED** in its entirety.

**1. Background[1]**

Plaintiff filed this action on September 4, 2009. ECF No. 1. In the Complaint, Plaintiff alleges Defendant wrongfully terminated several of Defendant's African-American employees in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. *Id.* Approximately one year later, on August 18, 2010, Defendant filed the current Motion for Summary Judgment. ECF No. 14. Defendant alleges summary judgment is appropriate because there are no genuine issues of material fact in dispute as to any of Plaintiff's claims. *Id.*

Plaintiff brings this action on behalf of four African-American individuals who were formerly

---

[1] The Background section is taken from the pleadings and briefing of the Parties as well as the docket in this case. *See* ECF Nos. 15, 24.

employed by Defendant. These individuals are named Cecil Delphin ("Delphin"), Robert Bennett ("Bennett"), Marcus Dunn ("Dunn"), and Murphy Chambliss ("Chambliss"). Defendant terminated all four of these individuals in September of 2005. Prior to that time, these individuals had worked both directly for Defendant and as contract laborers for Defendant.

Notably, in 2001, Dunn was hired as a contract laborer for Defendant. Between December of 2002 and November of 2003, Delphin, Bennett, and Chambliss were also hired as contract laborers for Defendant. As contract laborers, all four of these individuals were then promoted to shift leaders: Delphin (promoted October 6, 2003); Bennett (promoted January 14, 2004); Dunn (promoted June 18, 2004); and Chambliss (promoted September 8, 2004). Of the four individuals, only Dunn was later demoted from this position in July of 2005 as a result of alleged performance issues.

In May of 2005, Defendant formally hired Delphin, Bennett, Dunn, and Chambliss as employees. After they were hired, Defendant claims their job performance suffered. Due to their poor job performance, and overall job performance problems in this portion of the corporation, Defendant claims it created an evaluation form to evaluate each of the employees in this department and determine whether they should be terminated or retained. These evaluation forms scored these individuals on a points scale. Any employee who scored an 85 or above out of 100 would be retained while any employee who scored below 85 out of 100 would be terminated. Among other categories, points were allocated based upon "skills, attendance, safety, and performance."

This evaluation form was sent to one of Defendant's supervisors, Wilson, to evaluate Delphin, Bennett, Dunn, Chambliss, and several others. Wilson met with the other supervisors, Richard Aaron and Eddie Bryant, to evaluate the performance of the employees in question. Aaron,

Bryant, and Wilson are all Caucasian individuals. Richard Aaron was the direct supervisor of Delphin, Bennett, Dunn, and Chambliss. Upon evaluation, these four individuals scored below an 85. They were then recommended for termination and ultimately terminated. Plaintiff now brings this lawsuit against Defendant claiming the termination of Delphin, Bennett, Dunn, and Chambliss was in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991.

## 2. Applicable Law

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a federal court is authorized to grant summary judgment in a case. Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c)(2). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on an issue where the nonmovant bears the burden of proof at trial. *Id.* at 324. A mere scintilla of evidence in support of the non-movant's position is insufficient. *Anderson,* 477 U.S. at 252. To survive a motion for summary judgment, "a nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *Parks v. City of Horseshoe Bend, Arkansas,* 480 F.3d 837, 839 (8th Cir. 2007) (citation omitted). As stated in this rule, "[w]hen a

motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." *Id.*

**3. Discussion**

Plaintiff argues Delphin, Bennett, Dunn, and Chambliss were terminated in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. For a Title VII claim, the *McDonnell Douglas* burden-shifting analysis applies. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under this framework, the plaintiff has the initial burden of establishing his or her *prima facie* case. *See id.* at 802. Once the plaintiff makes that showing, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. *See id.* at 802-03. If the employer satisfies this burden, the plaintiff must prove the proffered reason is a pretext for racial discrimination. *See id.* at 804-05.

    **A.**    **The *Prima Facie* Case**

To establish a *prima facie* case for race discrimination, a plaintiff must establish he or she (1) is a member of a protected class; (2) was qualified for his or her position; and (3) suffered an adverse employment action under circumstances permitting an inference that the action was a result of unlawful discrimination. *See Habib v. Nations Bank,* 279 F.3d 563, 566 (8th Cir. 2001). To create an inference of discrimination and meet the requirements of the third element, a plaintiff can present evidence of disparate treatment between, for example, Caucasian and African-American individuals. *See EEOC v. Kohler Co. d/b/a Sterling Plumb. Group, Inc.,* 335 F.3d 766, 775-76 (8th Cir. 2003). The standard for establishing disparate treatment is "rigorous" and requires evidence that the individuals were similarly situated in all relevant respects and have "engaged in the same conduct

without any mitigating or distinguishing circumstances." *Id.*

In the present action, there is no dispute Plaintiff has met the first requirement of the *prima facie* case. Plaintiff has demonstrated these individual are of African-American descent. The only issues in dispute for the *prima facie* case are whether these individuals were qualified for their positions and whether they suffered an adverse employment action under circumstances permitting an inference that the action was a result of unlawful discrimination

### 1. Job Qualifications

As for their qualifications, Defendant claims these individuals had performance issues after they were formally hired in May of 2005 and were not meeting its legitimate expectations. In response, Plaintiff claims these individuals were retained as contract laborers, promoted, and ultimately hired over the course of several years. Plaintiff claims these facts indicate that even if there were performance issues, these individuals were qualified for their positions.

Importantly, Plaintiff has submitted evidence demonstrating that shortly before they were terminated, Eddie Bryant, one of the supervisors for Delphin, Bennett, Dunn, and Chambliss, completed a "Job Qualification Form" for each of them. ECF No. 27-1 at 74-77. These forms appear to state the job requirements for a "TBBPA/Packaging Tech," which was the job performed by these individuals. At the bottom of these evaluation forms, Eddie Bryant signed the form and found each of the individuals was "qualified on the above Safety/Additional Requirements." This form also appears to include several different job qualifications which Mr. Bryant also initialed, indicating Defendant was satisfied with their performance. Such a document indicates Defendant found these individuals qualified for their job shortly before they were terminated and certainly creates a fact issue as to whether they were meeting the legitimate expectations of their employer at

the time they were terminated. Upon review, this Court agrees there exists is a factual dispute regarding the Plaintiff's *prima facie* case precluding summary judgment.

### 2. Inference of Discrimination

As for whether there is an inference of discrimination, Defendant claims there is not a fact dispute on this issue. Defendant claims these individuals were terminated due to their poor performance and because they scored below 85 when evaluated by their supervisors. In response, Plaintiff claims the testing used to evaluate these individuals was based upon subjective criteria, and the true reason for their termination may have been racially motivated. Plaintiff argues that these individuals had solid work histories with Defendant as contract employees prior to 2005 and had even been promoted twice (once to the position of a shift leader and once to the position of employee of Defendant). Thus, Plaintiff argues, these circumstances of termination create an inference of discrimination. Upon review, this Court agrees there is a fact issue on this element.

Importantly, Plaintiff has presented evidence demonstrating a fact issue on whether similarly-situated Caucasian individuals were treated differently than these African-American individuals. Plaintiff has presented evidence that Eric Greer ("Greer"), a Caucasian employee who held the same position as Delphin, Bennett, Dunn, and Chambliss, scored below an 85 and was still retained. ECF No. 26-1 at 16-17. Although Defendant claims this was merely a typographical error and Mr. Greer would have been terminated had his score been properly calculated, this issue still creates a factual dispute. Indeed, in viewing the facts in a light most favorable to Plaintiff, a reasonable jury could find Defendant's failure to terminate Greer coupled with the termination of Delphin, Bennett, Dunn, and Chambliss established racial discrimination by Defendant. Accordingly, this Court finds this factual dispute precludes summary judgment as to whether these individuals suffered an adverse

employment action under circumstances permitting an inference that the action was a result of unlawful discrimination.

### B.      Evidence of Pretext

Upon Plaintiff's establishing the *prima facie* case, Defendant must provide legitimate, non-discriminatory reason for the adverse employment action. Here, Defendant has offered such a reason: Delphin, Bennett, Dunn, and Chambliss were terminated because they scored below an 85 in their evaluation by their supervisors.

Because Defendant has offered such a legitimate, non-discriminatory reason for termination, Plaintiff now has burden of demonstrating the reason proffered for termination was pretextual. Upon review, this Court finds there is a factual dispute precluding summary judgment on this issue. Notably, even though Defendant's evaluation scale was purportedly objective, Defendant's supervisors, who were all Caucasian individuals, completed those reviews subjectively based upon their impressions of the work performance of the employees whom they were responsible for supervising. Such subjective evaluations should be closely scrutinized:

> Although not illegal per se, subjective promotion procedures are to be closely scrutinized because of their susceptibility to discriminatory abuse. . . . The mere fact that the subjective process is intended to recognize merit does not necessarily alleviate its susceptibility to discriminatory abuse. When the evaluation is in any degree subjective and when the evaluators themselves are not members of the protected minority, the legitimacy and nondiscriminatory basis of the articulated reason for the decision should be subject to particularly close scrutiny by the trial judge.

*Royal S. Turner v. Mo. Highway and Transp. Comm'n,* 655 F.2d 159, 164 (8th Cir. 1981).

In "closely" scrutinizing these subjective procedures, this Court finds it important to note that these supervisors were given no instruction on how to evaluate their subordinates. ECF No. 25-1 at 30-31. The Caucasian supervisors, after being provided no instruction or direction in providing

their subjective opinions on the evaluation forms, found only the African-American employees failed to attain a score of 85. This creates a fact question that the stated reason for terminating these individuals may be pretextual.

Further, there is a factual dispute as to whether the stated reason (evaluation scores below 85) provided by Defendant for termination is accurate. For instance, Defendant's supervisors deducted 20 points from the total score of Dunn and Bennett because those individuals had allegedly committed disciplinary infractions. Each of those infractions are, however, in dispute. Notably, Dunn lost 20 points for puncturing a vent line with a forklift, but Dunn denies that he had ever had an accident while driving a forklift. ECF No. 25-1 at 17. Bennett lost 20 points for allegedly not removing a chair that he was told to remove by his supervisor, but Bennett testified that he did remove the chair as requested.[2] ECF No. 25-2 at 37. These incidents raise factual issues as to whether Defendant's scoring of the individuals in question was accurate, or rather was a pretext for illegal discrimination.

Because Plaintiff has presented sufficient evidence to create a fact issue on the issue of pretext such that a reasonable jury might conclude that Defendant's stated reason for discharging these individuals was a pretext for racial discrimination, the Court finds Defendant's Motion for Summary Judgment should be **DENIED.** *See Moyer v. DVA Renal Healthcare, Inc.,* 368 Fed. Appx. 714, 716 (8th Cir. 2010) (holding that a plaintiff may survive summary judgment in a Title VII racial discrimination case by presenting direct evidence of discrimination or by creating an inference of discrimination under the *McDonnell Douglas* burden-shifting framework).

---

[2] Had Bennett not lost the 20 points, he would have scored above an 85. ECF No. 26-1 at 5-6.

**4. Conclusion**

Based upon the foregoing, this Court recommends that Defendants' Motion for Summary Judgment be **DENIED** in its entirety.[3]

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.  See *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).**

**ENTERED this 17th day of February, 2011.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE

---

[3] In its Motion for Summary Judgment, Defendant also raises the issue of whether Dunn's damages should be limited. Such an issue–regarding a possible limitation on damages–should be addressed at a later stage in the litigation. However, even if this issue was required to be addressed at this stage of the litigation, Defendant's mere allegation that it would have terminated Dunn had it known he had falsified his background is not sufficient. *See Sellers v. Mineta,* 358 F.3d 1058, 1064 (8th Cir. 2004). Instead, Defendant is required to produce evidence that it actually had a practice of terminating an individual who engaged in the same prohibited activity as Dunn. *See id.* (holding "[t]he court must look to the employer's actual employment practices and not merely the standards articulated in its employment manuals").  Here, Defendant has produced no such evidence.  Instead, Defendant has merely produced a affidavit alleging that had it known of this misrepresentation, Dunn would have been terminated. ECF No. 15-1 ¶ 16.